IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ESTHER ALMANZAR,                )
                                )
            Debtor/Appellant,   )
                                )
            v.                  )       1:13CV146
                                )
BANK OF AMERICA, NA, FEDERAL    )
NATIONAL MORTGAGE ASSOCIATION,  )
AND SUBSTITUTE TRUSTEE          )
SERVICE, INC.,                  )
                                )
            Appellees.          )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This is an appeal from an Order (Doc. 6-2) issued by the United States Bankruptcy Court for the Middle District of North Carolina. Appellant Esther Almanzar, the debtor/plaintiff in the bankruptcy court, appeals that court's decision to grant a motion to dismiss (Docs. 4-2, 4-4) filed by Defendants below, Bank of America, NA ("Bank of America"), Federal National Mortgage Association ("Fannie Mae"), and Substitute Trustee Service, Inc. ("STS") (collectively "Appellees"). For the reasons set forth herein, the decision of the bankruptcy court will be affirmed in its entirety.

## I.    BACKGROUND

The relevant preliminary facts are set out in detail in the bankruptcy court's memorandum opinion (Doc. 6-1), which was

required to accept the well-pleaded factual allegations in Almanzar's complaint (Doc. 4) as true pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(6). In short, Almanzar executed a note in the amount of $191,960 to Bank of America, secured by a deed of trust on property located at 308 Rondelay Drive in Durham, North Carolina ("the property"). (Doc. 6-1 at 2; Doc. 4 ¶ 14.) Subsequently, Bank of America sold its interest in the note to Fannie Mae. (Doc. 6-1 at 2; Doc. 4 ¶ 15.) On September 29, 2010, STS was named as substitute trustee under the deed of trust. (Doc. 4 ¶ 26.)

Almanzar defaulted on the note, and the Clerk of Superior Court of Durham County issued an Order (the "Foreclosure Order") on August 31, 2011, allowing STS to foreclose on the property and conduct a foreclosure sale. (Doc. 4-5.) "The Foreclosure Order found that Bank of America was the holder of the note, that notice of the foreclosure hearing was properly served on Almanzar, and that the substitute trustee [STS] was entitled to foreclose under the terms of the deed of trust." (Doc. 6-1 at 2; Doc. 4-5 at 2.)

At the foreclosure sale on September 21, 2011, Bank of America purchased the property. (Doc. 4 ¶ 36.) The ten-day upset-bid period expired on October 3, 2011, without any bids,

and the sale became final on October 7. (Id. ¶ 37; Doc. 6-1 at 2.) The deed was recorded on October 13. (Doc. 6-1 at 2.)

On October 28, Almanzar moved to set aside the foreclosure with the Clerk of Superior Court of Durham County; the Clerk transferred the motion to Superior Court. (Doc. 4 ¶ 38; Doc 6-1 at 2.) On March 5, 2012, the Superior Court denied Almanzar's motion on the ground it lacked subject-matter jurisdiction because the foreclosure sale had already been completed and the property conveyed to Bank of America before the motion was filed. (Doc. 4-8.)

Subsequently, Almanzar filed a petition for Chapter 13 relief. Bank of America moved for relief from stay, seeking permission to take possession of the property. (Doc. 6-1 at 3.) On the day Bank of America's motion was to be heard, Almanzar initiated an adversary proceeding in the bankruptcy court (Adversary No. 12-9045), challenging the validity of the Foreclosure Order issued by the Clerk of Superior Court of Durham County. (Doc. 6-1 at 3.) Almanzar now appeals the bankruptcy court's Order granting Appellees' motion to dismiss her complaint in the adversary proceeding. (Doc. 6-2.)

In her complaint, Almanzar asserted five causes of action,

four of which are currently before this court.[1]  First, Almanzar

sought "declaratory relief adjudicating that the foreclosure was

not properly conducted, and that good cause exists to set aside

the foreclosure and subsequent sale to Bank of America."  (Doc.

6-1 at 3; Doc. 4 at 4.)  Second, she sought damages against Bank

of America and Fannie Mae for an alleged violation of the Real

Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et

seq., committed by failing to notify her of a change in

servicing rights on the loan.  (Doc. 4 at 4; Doc. 6-1 at 3.)

In her fourth cause of action, Almanzar alleged that STS

breached its fiduciary duty to her by failing to provide her

statutory notice of foreclosure hearings.  (Doc. 4 at 5 & ¶¶ 27-

33; Doc. 6-1 at 3.)  Finally, Almanzar sought damages against

Bank of America and Fannie Mae under the North Carolina Unfair

and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat.

§ 75-1.1 et seq., for allegedly "misrepresent[ing] their real

party in interest status to the court and to [Almanzar] and

fail[ing] to notify [Almanzar] of the change in loan servicing."

(Doc. 4 at 5.)

     The bankruptcy court dismissed Almanzar's complaint in its

entirety.  The court held that the Rooker-Feldman doctrine

_____

[1] The third cause of action, against the Federal Housing Finance Agency
for failure to supervise Fannie Mae, was voluntarily dismissed by
Almanzar on August 22, 2012. (Doc. 6-1 at 3 n.1.)

4

prohibited it from granting the relief sought on the claims for declaratory relief, breach of fiduciary duty, and a portion of the UDTPA claim. (Doc. 6-1 at 5-8, 10-11.) With respect to the RESPA claim and the remaining UDTPA claim, the court determined that Almanzar failed to state a claim for which relief could be granted but dismissed the claims without prejudice, granting Almanzar leave to amend her complaint. (<u>Id.</u> at 8-10.) The RESPA claim was dismissed because Almanzar failed to allege that the servicing of the note was transferred from Bank of America to Fannie Mae and failed to allege that she suffered any damages proximately resulting from the alleged violation. (<u>Id.</u> at 10.) Similarly, the remainder of the UDTPA claim was dismissed because Almanzar failed to allege any damages resulting from the alleged change in servicing of the loan. (<u>Id.</u> at 11.)

## II. ANALYSIS

### A. Standard of Review

This appeal is brought pursuant to Federal Rule of Bankruptcy Procedure 8001(a). "When sitting as an appellate court in bankruptcy, a federal district court applies the clearly erroneous standard to the bankruptcy court's findings of fact, but conducts a *de novo* review of questions of law." <u>Kadlecek v. Schwank USA, Inc.</u>, 486 B.R. 336, 339 (M.D.N.C. 2013) (citing <u>In re Johnson</u>, 960 F.2d 396, 399 (4th Cir. 1992)). Under Federal Rule of Bankruptcy Procedure 7012(b), which is

analogous to Federal Rule of Civil Procedure 12(b)(6), the bankruptcy court was required to take the factual allegations in Almanzar's complaint as true for the purposes of deciding the motion to dismiss. See In re Caremerica, Inc., 409 B.R. 737, 745 (Bankr. E.D.N.C. 2009). Finally, the bankruptcy court's decision to deny leave to amend a complaint is reviewable for abuse of discretion. Cozzarelli v. Inspire Pharms. Inc., 549 F.3d 618, 630 (4th Cir. 2008).

**B. Claim for Declaratory Relief**

The bankruptcy court determined that the Rooker-Feldman doctrine[2] barred it from reconsidering the validity of the foreclosure and subsequent foreclosure sale. The Rooker-Feldman doctrine is a jurisdictional bar that "prohibits the United States District Courts, with the exception of habeas corpus actions, from 'sit[ting] in direct review of state court decisions.'" Jordahl, 122 F.3d at 199 (quoting Feldman, 460 U.S. at 483 n.16). "The doctrine extends not only to . . . claims presented or adjudicated by the state courts but also to claims that are 'inextricably intertwined' with a state court judgment." Id. (quoting Feldman, 460 U.S. at 486-87). The Supreme Court has clarified that Rooker-Feldman applies to

_____

[2] The doctrine derives its name from D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983), and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). See Jordahl v. Democratic Party of Va., 122 F.3d 192, 197 n.5 (4th Cir. 1997).

"cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The purpose of the doctrine is to promote respect between the federal and state courts in our system of dual sovereignty. See Vulcan Chem. Tech., Inc. v. Barker, 297 F.3d 332, 343 (4th Cir. 2002). Only the Supreme Court of the United States has jurisdiction to review state court judgments. See Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 198–99 (4th Cir. 2000).

Almanzar concedes that her claim for declaratory relief "may" implicate Rooker-Feldman and thus contends that the bankruptcy court erred by refusing to allow leave to amend her complaint as to this claim. (Doc. 12 at 3.) The bankruptcy court held that Rooker-Feldman applied to this claim and that Almanzar could not avoid Rooker-Feldman's application by re-pleading her allegations. Thus, the court dismissed the claim for declaratory relief with prejudice. (Doc. 6-1 at 8.)

Rooker-Feldman applies to foreclosure proceedings before the Clerk of Superior Court. See, e.g., Brumby v. Deutsche Bank Nat'l Trust Co., No. 1:09CV144, 2010 WL 617368, at *1, 3 (M.D.N.C. Feb. 17, 2010) (applying Rooker-Feldman to foreclosure proceedings before the Clerk of Superior Court of Guilford

County pursuant to N.C. Gen. Stat. § 45-21.16, which characterizes such a decision by the Clerk as a "judicial act"). "In the context of a state court foreclosure proceeding, Rooker-Feldman prohibits claims brought in federal court that may 'succeed only to the extent that the state court wrongly decided the foreclosure action.'" Poindexter v. Wells Fargo Bank, N.A., No. 3:10cv257, 2010 WL 3023895, at *2 (W.D.N.C. July 29, 2010) (quoting Postma v. First Fed. Sav. & Loan of Sioux City, 74 F.3d 160, 162 (8th Cir. 1996)). Here, like in Brumby, the county Clerk of Court issued an order declaring that the debt was valid, Almanzar was in default, STS had the right to foreclose, and Almanzar had shown no legal reason why the foreclosure should not proceed. See Brumby, 2010 WL 617368, at *3; Doc. 4-5. Therefore, the validity of the foreclosure was established by the state court proceeding and cannot be challenged in the bankruptcy court or in this court.

Although Almanzar concedes that Rooker-Feldman would apply to this claim, she appears to argue that some exceptions exist to the doctrine's application. With respect to the claim for declaratory relief, she contends that a due process exception exists. But, no exception to Rooker-Feldman for lack of procedural due process exists. In re Keeler, 273 B.R. 416, 421 (D. Md. 2002). If Almanzar was dissatisfied with the Clerk's Foreclosure Order, her remedy was to seek appellate review in

8

the North Carolina courts, not in this court or in the bankruptcy court. See id. (citing In re Goetzman, 91 F.3d 1173, 1177–78 (8th Cir. 1996)).[3] Therefore, the bankruptcy court did not err in determining that the Rooker-Feldman doctrine deprived it of jurisdiction over Almanzar's claim for declaratory relief.[4]

## C. Breach of Fiduciary Duty Claim (against STS)

The bankruptcy court also held that Almanzar's breach of fiduciary duty claim against Appellee STS was barred by Rooker-Feldman because the issue of whether Almanzar received "statutory notice" was decided by the Clerk in the Foreclosure Order. (Doc. 6-1 at 8.) Almanzar argues that because this claim was never fully litigated in the state proceeding, it is not barred by Rooker-Feldman. However, as discussed above, her

---

[3] In Almanzar's "Issues Presented" section of her brief, she suggests that there is a "void judgment" exception to Rooker-Feldman. However, other than this statement, she makes no argument in either her original brief or reply brief to this effect. (Doc. 12 at 2.) To the extent she intended to raise such an argument, it is waived for failure to advance it.

[4] Almanzar also argues that she should be given leave to amend her complaint as to this claim to cure the Rooker-Feldman defect. However, the bankruptcy court held that the defect was not curable because there was no way to avoid Rooker-Feldman's application. The record certified to this court on appeal does not indicate that a separate motion to amend was ever filed in the bankruptcy court, as required by Federal Rules of Civil Procedure 7(b) and 15(a) and Local Rule 7.3(a). See Apotex Inc. v. Eisai Inc., No. 1:09CV477, 2010 WL 3420470, at *6 (M.D.N.C. Aug. 27, 2010). Nor does the record include the required proposed amended complaint. See Rankin v. Mattamy Homes Corp., No. 1:10CV117, 2010 WL 3394036, at *3 (M.D.N.C. Aug. 26, 2010). Therefore, the court cannot say that the bankruptcy court abused its discretion by denying Almanzar leave to amend her complaint.

claim against STS may succeed only to the extent that the Clerk's determination that she in fact received notice (Doc. 4-5 ¶ 3) was incorrect.  See Poindexter, 2010 WL 3023895, at *2. Rooker–Feldman deprived the bankruptcy court of jurisdiction to revisit the Clerk's determination.  The North Carolina cases cited by Almanzar prove this very point.  North Carolina courts on occasion do set aside foreclosure orders issued by the Clerk of Superior Court.  See, e.g., PMB, Inc. v. Rosenfeld, 48 N.C. App. 736, 269 S.E.2d 748 (1980).  If Almanzar wanted relief from the Clerk's judgment, her remedy was to continue her appeal in the North Carolina courts rather than to ask the federal courts to set aside a state court judgment.  The bankruptcy court was correct that Rooker–Feldman divested it of jurisdiction to reconsider the Foreclosure Order and therefore to consider Almanzar's breach of fiduciary duty claim.[5]

### D. RESPA Claim (against Bank of America and Fannie Mae)

The bankruptcy court held that Almanzar could not state a claim for relief under RESPA because her complaint alleged that Bank of America serviced the loan, but the court dismissed the claim without prejudice to allow Almanzar to amend her allegations.  She instead chose to appeal to this court.

---

[5] Almanzar's argument that the bankruptcy court erred by denying her leave to amend her complaint fails on this claim as well.  She cannot avoid the Rooker-Feldman issue simply by re-pleading her allegations.

The bankruptcy court's analysis of this claim was correct. The statute provides that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the *servicing* of the loan to any other person." 12 U.S.C. § 2605(b)(1) (emphasis added). It defines "servicer" as "the person responsible for servicing of a loan (*including the person who makes or holds a loan if such person also services the loan*)." Id. § 2605(i)(2) (emphasis added). As the bankruptcy court pointed out, the complaint alleged that Bank of America continued to service the loan even after it was sold to Fannie Mae. (Doc. 4 ¶¶ 16–17.) Because no change in the servicing of the loan is alleged to have occurred, the bankruptcy court correctly dismissed Almanzar's RESPA claim.

### E.   UDTPA Claim (against Bank of America and Fannie Mae)

With respect to the UDTPA claim, the bankruptcy court first held that because the Clerk determined that Bank of America was the holder of the note (Doc. 4–5 ¶ 1), Rooker-Feldman barred consideration of any claim based upon the contention that Bank of America or Fannie Mae misrepresented their real party in interest status to the court (Doc. 6–1 at 11). Almanzar argues both that this claim is not "inextricably intertwined" with the Clerk's judgment and, in the alternative, that a fraud and/or misrepresentation exception to Rooker-Feldman should apply.

The bankruptcy court was correct that the Clerk's determination that Bank of America was the holder of the note effectively bars review of the real party in interest claim. The Clerk found that Bank of America was the real party in interest, and there is no dispute that Bank of America was the servicer of the loan. This court could not come to a different conclusion without first determining that the Clerk's findings of fact were incorrect. Therefore, Rooker–Feldman deprived the bankruptcy court of jurisdiction over a collateral attack of this finding. Because the real party in interest claim rests on an attempt to collaterally attack the finding that Bank of America was the holder of the note, it cannot proceed.

Almanzar's argument that a fraud exception to Rooker-Feldman should be recognized is unavailing. The Fourth Circuit has thus far not recognized such an exception, and the District of South Carolina, the only court in this circuit that appears to have considered the issue, has declined to do so. See Patterson v. Autozone Auto Parts, Inc., Civ. A. No. 0:10-2438, 2011 WL 379427, at *5 (D.S.C. Feb. 3, 2011); Wise v. Toal, Civ. A. No. 6:09-00495, 2009 WL 1606498, at *3-4 (D.S.C. June 8, 2009); see also Steven N. Baker, *The Fraud Exception to the Rooker-Feldman Doctrine: How It Almost Wasn't (And Probably Shouldn't Be)*, 5 Fed. Cts. L. Rev. 139, 160-61 (2011) (surveying the existence of a fraud exception to Rooker-Feldman and noting

that the Fourth Circuit has yet to recognize the exception). This court declines to recognize the exception in the first instance. As the court in Patterson recognized, the existence of fraud in procuring the state court judgment can be challenged on direct appeal to the state appellate courts. Patterson, 2011 WL 379427, at *5. This court is not the proper forum for such a challenge. Therefore, the bankruptcy court was correct that Rooker-Feldman barred it from considering the real party in interest claim.

Finally, the bankruptcy court dismissed Almanzar's UDTPA claim without prejudice to the extent it was based upon an alleged failure of Bank of America and Fannie Mae to provide notice of a change in the loan servicer. (Doc. 6-1 at 12.) The court allowed leave to amend the complaint to clarify the allegations, but dismissed it on the ground that Almanzar failed to allege any damage proximately resulting from this lack of notice. (Id.) Once again, rather than amend her complaint, Almanzar elected to appeal to this court.

To prevail on a UDTPA claim, "a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiff[]." Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71-72, 653 S.E.2d 393, 399 (2007). The bankruptcy court was correct that Almanzar's complaint failed to allege any injury

13

proximately caused by the alleged failure to provide notice. Without pleading any injury, Almanzar's claim cannot survive a motion to dismiss.

Therefore, the bankruptcy court correctly dismissed Almanzar's UDTPA claim in its entirety.

## III. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that the Order of the bankruptcy court (Doc. 6-2) is AFFIRMED.

/s/   Thomas D. Schroeder
United States District Judge

December 31, 2013